**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Civil Action No.: 07-0178 (RMC)**

## <u>DEFENDANT'S MOTION TO DISMISS THE COMPLAINT</u>

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, defendant, the United States Postal Service, hereby moves for dismissal of the complaint.  Because plaintiff has been granted all of the relief it is legally entitled to receive, this matter is moot, and therefore the Court lacks jurisdiction to adjudicate the claims raised in the complaint.

A memorandum of points and authorities in further support of defendant's motion, as well as a proposed order, accompany this motion.

Dated: May 7, 2007

                                                    Respectfully submitted,

                                                    ___/s/ Jeffrey A. Taylor_____
                                                    JEFFREY A. TAYLOR, D.C. BAR # 498610
                                                    United States Attorney

                                                    ___/s/ Rudolph Contreras_____
                                                    RUDOLPH CONTRERAS, D.C. BAR #  434122
                                                    Assistant United States Attorney

                                                    ___/s/ Michelle N. Johnson_____
                                                    MICHELLE N. JOHNSON, D.C. BAR # 491910
                                                    Assistant United States Attorney

United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT

Of Counsel:

Dennis E. Szybala
United States Postal Service
National Employment Litigation Unit
475 L'Enfant Plaza, S.W.
Washington, DC 20260

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMERICAN POSTAL WORKERS UNION, AFL-CIO**, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| **UNITED STATES POSTAL SERVICE**, | ) ) |
| Defendant. | ) ) ) |

Civil Action No.: 07-0178 (RMC)

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, defendant, the United States Postal Service ("the Postal Service"), hereby moves for dismissal of the complaint. As will be discussed in further detail below, because defendant has fully complied with the arbitration awards plaintiff seeks to enforce, the claims asserted in the complaint are now moot. Accordingly, dismissal pursuant to Rule 12(b)(1) is warranted.

**I.    Factual Background**

The present action was initiated by the American Postal Workers Union ("APWU" or "the Union") on behalf of one of its members, Christopher Broderick. Mr. Broderick is currently employed by the Postal Service as a full-time distribution clerk at the Smithtown, New York postal facility. Exhibit 1, Declaration of Andrew J. Moresco dated May 3, 2007 ("Moresco Decl.") ¶ 12. The events leading to this lawsuit began on January 15, 2005, when Mr. Broderick was removed from his employment as a full-time regular window clerk at the Smithtown facility for alleged misappropriation of funds and other financial improprieties. Moresco Decl., Ex. A,

Arbitration Award issued by Harry R. Gudenberg, dated September 12, 2005, at 2-6. On behalf of Mr. Broderick, the APWU filed a grievance pursuant to the collective bargaining agreement ("CBA") it is a party to with the Postal Service, challenging Mr. Broderick's removal. Id. Because the parties were unable to resolve the matter through the procedures provided for in the CBA, the matter proceeded to arbitration. On September 12, 2005, Arbitrator Gudenberg rendered an award holding that Mr. Broderick was

> [t]o be reinstated with back pay, less any other compensation received, from January 15, through the implementation of this decision. However, he is not to be reinstated as a window clerk. The Service and the Union, together with the grievant, are to find placement for him as a distribution clerk or such other position that does not handle cash transactions as they may determine.

Id. at 1. Arbitrator Gudenberg retained jurisdiction "in the event the parties request assistance in the implementation of [his] decision." Id.

The Postal Service reinstated Mr. Broderick effective October 20, 2005. Moresco decl. ¶ 3. On that date, Mr. Broderick was directed to report to work as a part-time distribution clerk at the Bethpage Logistics and Distribution Center. Id. On that same date, Mr. Broderick was also restored his full seniority rights. Id. Mr. Broderick was advised, via letter dated February 17, 2006, that he needed to provide additional information in order for his back pay to be processed. Id. However, Mr. Broderick failed to report to work at the Bethpage facility on October 20, 2005, or at any time thereafter. Id. ¶ 4. As a result, he was placed in absent without leave ("AWOL") status from October 20, 2005 through July 16, 2006. Id. On July 16, 2006, he was again removed from his employment, this time as a result of his failure to report to work on October 20, 2005. Id.

During this time, however, the Union challenged the Postal Service's reinstatement of

Mr. Broderick as a part-time flexible distribution clerk at the Bethpage facility, which resulted in the filing of another grievance by the Union. This grievance proceeded to a hearing before Arbitrator Gudenberg on July 17, 2006, the date after Mr. Broderick had been removed from employment. Moresco Decl., Ex. B, Arbitration Award issued by Harry R. Gudenberg, dated July 24, 2006. In his supplemental award, Arbitrator Gudenberg determined that Mr. Broderick was to be returned to work at the Smithtown postal facility as a distribution clerk, and was "entitled to back pay and seniority credit for the reasons more fully discussed in the complete decision." Id. at 1. Specifically, Arbitrator Gudenberg stated that Mr. Broderick was, "in accordance with my original decision . . . to be credited with seniority for the period of time of the removal action." Id. at 6. In addition, Arbitrator Gudenberg noted that Mr. Broderick had admitted that he had received paperwork from the Postal Service requesting information necessary to process the payment of back pay and that "he had not provided the data or submitted it since there was a great deal of confusion over his reinstatement and job offers and advice he had been given." Id. at 6. Arbitrator Gudenberg advised the parties "that the grievant should quickly provide the [Postal] Service with the paperwork and data they were seeking and that the Service should, upon receipt, rapidly process their back pay obligation." Id.

However, because Mr. Broderick had been removed from employment effective July 16, 2006, Mr. Gudenberg's supplemental award could not be implemented. Moresco Decl. ¶ 6. The Union thereafter filed another grievance on behalf of Mr. Broderick, challenging his July 16, 2006 removal. Id. ¶ 7. This grievance proceeded to a hearing before Arbitrator Holden. Moresco Decl., Ex. C, Arbitration Award issued by Sarah Cannon Holden, dated February 26, 2007. In rendering her decision, Arbitrator Holden rejected the Union's argument that the

3

Gudenberg decisions were dispositive of the issue and that Mr. Broderick should be reinstated

forthwith. Id. at 5. Specifically, Arbitrator Holden stated:

> It is the act of not following management's instructions
> that is the subject of the instant grievance; the issue is not
> whether the instructions [for Mr. Broderick to report to the
> Bethpage facility] were in compliance with the Gudenberg
> award. The Service's charges that the grievant was AWOL
> and that he failed to follow instructions were not at any time
> before Arbitrator Gudenberg and were not, therefore, resolved
> by his 'Supplemental Award.'

Id. at 6. Notably, Arbitrator Holden found that Arbitrator Gudenberg's supplemental award

merely "clarifie[d] his original award." Id.

In considering the issue of Mr. Broderick's July 16th removal, Arbitrator Holden noted

that Arbitrator Gudenberg "made it clear that the parties were to work out [Mr. Broderick's] new

assignment." Id. at 6. Arbitrator Holder concluded, however, that when an agreement could not

be reached, the parties should have returned to the arbitrator. Id. However, they did not and Mr.

Broderick failed to "report to work as instructed." Id. Arbitrator Holden found that Mr.

Broderick erred in failing to "report as instructed and file[ ] a grievance in a timely fashion that

could have been resolved months ago." Id. at 7. This is so because "[t]he accepted practice is to

obey an order in the moment and then grieve it. Obey now, grieve later." Id. Mr. Broderick

failed to "follow the accepted practice and he failed to report for his assigned tour." Id. In

concluding, Arbitrator Holden found that Mr. Broderick should be reinstated, however, she

concluded that "[t]here shall be no award of back pay associated with the instant grievance." Id.

The Postal Service promptly implemented the Holden award and Mr. Broderick was

reinstated to a full-time regular distribution clerk position at the Smithtown postal facility

effective March 12, 2007. Moresco Decl. ¶ 9. On November 3, 2006, Mr. Broderick was paid

4

back pay for the period from January 15, 2005, the date of his initial removal from the Postal Service, until October 20, 2006, the date that he was reinstated and ordered to report to the Bethpage facility. Id. ¶ 10; see also Moresco Decl. Ex. D (copy of back pay remittance). In light of Arbitrator Holden's findings that Mr. Broderick was not entitled to back pay in regards to his grievance concerning his July 16th removal, Mr. Broderick was not paid back pay for the period from October 20, 2005 through March 12, 2007, the time that he was AWOL and failed to report to work. Id. ¶ 11. Thus, at this time, Mr. Broderick has (1) been reinstated as a full-time regular distribution clerk at the Smithtown facility (a position in which he does not handle cash transactions); (2) been granted full restoration of his seniority rights and (3) been paid all the back pay he is entitled to receive. Id. ¶ 12.

APWU filed this action in this Court on January 26, 2007. In its complaint, the Union seeks to enforce the Gudenberg awards, and specifically seeks an order requiring the Postal Service to reinstate Mr. Broderick to work at the Smithtown postal facility as a distribution clerk; to pay him back pay, less any other compensation received, from January 15, 2005, until such date as the awards are fully implemented; and to restore Mr. Broderick's seniority credit. Complaint at 4-5. However, as discussed supra, these actions have already been taken thus rendering this action moot.

## II.    ARGUMENT

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court should dismiss the complaint in this action because the plaintiff has been afforded all of the relief it seeks and this action is now moot.

### A.     Standard of Review

Dismissal is warranted pursuant to Federal Rule of Civil Procedure 12(b)(1) because this case is now moot.  See Abu Ali v. Gonzales, 387 F. Supp. 2d 16, 17 (D.D.C. 2005) ("As mootness creates a jurisdictional defect, respondents' motion will be treated as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).").  In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor."  Thompson v. Capitol Police Board, 120 F. Supp. 2d 78, 81 (D.D.C. 2000) (citations omitted).  "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations."  Rann v. Chao, Dep't of Labor, 154 F. Supp. 2d 61, 64 (D.D.C. 2001) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)).  In addition, when determining whether jurisdiction is proper, the Court is at liberty to look beyond the pleadings without converting the motion into one for summary judgment.  See Haase v. Sessions, 835 F.2d 902, 905 (D.C. Cir. 1987) ("It seems clear . . . that the plain language of Rule 12(b) permits only a 12(b)(6) motion to be converted into a motion for summary judgment").

### B.     The Present Action is Now Moot.

As the Supreme Court has stated, "federal courts are without power to decide questions that cannot effect the rights of litigants in the case before them."  DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)).  This inability of the federal judiciary "'to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'"  Id. (quoting Liner v. Jafco, Inc., 375 U.S. 301, 306 n.3 (1964)); see also

Arizonans for Official English v. Arizona, 520 U.S. 43, 64 (1997); City of Houston v.
Department of Housing and Urban Development, 24 F.3d 1421, 1426 (D.C. Cir. 1994) ("Federal
courts lack jurisdiction to decide moot cases because their constitutional authority extends only
to actual cases or controversies"); Florida Wildlife Federation v. Goldschmidt, 611 F.2d 547,
548 (5th Cir. 1980).

   The District of Columbia Circuit has strictly enforced Article III's requirements. "Article
III, Section 2 of the Constitution permits federal courts to adjudicate only 'actual, ongoing
controversies.' If events outrun the controversy such that the court can grant no meaningful
relief, the case should be dismissed as moot." McBryde v. Committee to Review Circuit Council
Conduct & Disability Orders of the Judicial Conference of the United States, 264 F.3d 52, 55
(D.C. Cir. 2001) (citations omitted); see also Fraternal Order of Police v. Rubin, 134 F. Supp.2d
39, 41 (D.D.C. 2001). Article III limits the federal courts to deciding "questions presented in an
adversary context and in a form historically viewed as capable of resolution through the judicial
process." Flast v. Cohen, 392 U.S. 83, 95 (1968). A case becomes moot when "the issues
presented are not longer 'live' or the parties lack a legally cognizable interest in the outcome."
Albritton v. Kantor, 944 F. Supp. 966, 974 (D.D.C. 1996) (quoting County of Los Angeles v.
Davis, 440 U.S. 625, 631 (1979).

   An intervening factual event may render a case moot. See, e.g., Roswil v. Retail Store
Employees Local 322, 518 F.2d 663 (8th Cir. 1975). In Roswil, the court determined that a
motion to set aside an arbitrator's award was moot where the employer and union had,
subsequent to the filing of the complaint, complied with the award by negotiating and entering
into a collective bargaining agreement. Id. at 644. Similarly, a case is rendered moot when the

relief sought by the plaintiff has already been provided.  See, e.g., Jean v. Dep't of Labor, No. Civ.A. 89-0611, 1990 WL 51563, at *4 (D.D.C. Jan. 9, 1990) (dismissing complaint as moot where "defendants have already afforded [plaintiffs the] relief [they seek].").

The current action before this Court is now moot because the Postal Service has fully complied with the awards at issue and has afforded Mr. Broderick all of the relief to which he is entitled.  In its complaint, the Union seeks to enforce the Gudenberg September 2005 and July 2006 awards, and specifically seeks an order requiring the Postal Service to reinstate Mr. Broderick to work at the Smithtown postal facility as a distribution clerk; to pay him back pay, less any other compensation received, from January 15, 2005, until such date as the awards are fully implemented; and to restore Mr. Broderick's seniority credit.  Complaint at 4-5.  This relief has already been afforded to Mr. Broderick, as he has been reinstated as a full-time distribution clerk at the Smithtown facility and has received all the seniority credit and back-pay that he is entitled to receive.  Moresco Decl. ¶¶ 10, 12.

In determining that compliance with Arbitrator Gudenberg's awards has been accomplished, it is important to note that the September 2005 Gudenberg award did not require that Mr. Broderick be reinstated to work at the Smithtown postal facility.  Rather, Arbitrator Gudenberg's initial award simply required that Mr. Broderick be reinstated to a position "as a distribution clerk or such other position that does not handle cash transactions as [the parties] may determine."  Moresco Decl., Ex. A.  Thus, the Postal Service fully complied with Arbitrator Gudenberg's September 12, 2005 award when it ordered Mr. Broderick to report to work on October 20, 2005, at the Bethpage facility as a part-time flexible distribution clerk.  Moresco Decl. ¶ 3.  It was Mr. Broderick who failed to report to work on that date, leading to his second

8

removal on July 16, 2006. Id. ¶ 4. And, Arbitrator Gudenberg's July 24, 2006 supplemental award did not address Mr. Broderick's failure to report to the Bethpage facility because those issues were not before him. Rather, Arbitrator Gudenberg merely concluded that because "the parties have been unable to find a position for the grievant that they believe would have been suitable or workable, it is directed that the grievant be returned to the Smithtown postal facility, as a distribution clerk." Moresco Decl., Ex. B, at 5-6. This was done by the Postal Service, effective March 12, 2007. Moresco Decl. ¶ 9. The reason this was not done until March 12, 2007 is because in the interim, Mr. Broderick had been removed from his employment a second time. Id. ¶ 10. The issue of that removal was addressed by Arbitrator Holden, who concluded that Mr. Broderick was not entitled to back pay as a result of his removal for the period that he was AWOL, i.e., October 20, 2005 through March 12, 2007. Id. ¶ 11.[1] Thus, for these reasons, Mr. Broderick has been granted all of the relief granted to him by virtue of Arbitrator Gudenberg's September 2005 award and his July 2006 supplemental award.

## III.    CONCLUSION

For the reasons set forth above, the Postal Service has fully complied with Arbitrator Gudenberg's September 2005 and July 2006 awards. Because the Court cannot grant the Union any additional relief than that which has been provided, this action has been rendered moot and should be dismissed.

---

[1]Notably, the Union has not sought to move to vacate Arbitrator Holden's award.

9

Dated: May 7, 2007

Respectfully submitted,

   /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


   /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


   /s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT


Of Counsel:

Dennis E. Szybala
United States Postal Service
National Employment Litigation Unit
475 L'Enfant Plaza, S.W.
Washington, DC 20260

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES POSTAL SERVICE,<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No1:07CV00178<br><br>Judge Rosemary M. Collier |

## DECLARATION OF ANDREW J. MORESCO

I, Andrew J. Moresco, hereby state as follows:

1.      I have been employed by the U.S. Postal Service since 1973.   I presently serve as Manager of Human Resources for the Long Island District and have held this position since December 1997.  My office has oversight responsibility for personnel actions taken with respect to Postal employees in the Long Island District.

2.      I have reviewed the three arbitration awards regarding Christopher Broderick, a full time distribution clerk at the Smithtown, New York Post Office that were issued in 2005, 2006, and 2007.   My office was responsible for the implementing all personnel actions relating to those awards.  Attached to this declaration as Exhibit A is a copy of the arbitration award issued September 12, 2005 by Arbitrator Harry R. Gudenberg.  Attached as Exhibit B is a copy of the arbitration award issued July 24, 2006, also by Arbitrator Harry R. Gudenberg.  Attached as Exhibit C is a copy of the arbitration award issued February 27, 2007 by Arbitrator Sarah C. Holden.

3.     Effective January 15, 2005, Mr. Broderick was removed from his position as a full time regular window clerk at the Smithtown Post Office. That removal was reversed as a consequence of the September 12, 2005 arbitration award issued by arbitrator Gudenberg (Ex. A) and Mr. Broderick was reinstated effective October 20, 2005 when he was directed to report to work as a part time flexible distribution clerk at the Bethpage Logistics and Distribution Center. As part of his reinstatement pursuant to the Gudenberg award, Mr. Broderick was also restored to his full seniority rights. In addition, Mr. Broderick was advised, by letter dated February 6, 2006 that he needed to provide additional information in order for the Postal Service to process his back pay.

4.     Mr. Broderick did not report to the Bethpage facility on October 20, 2005 or at any time thereafter. He was carried in an AWOL status from October 20, 2005 through July 16, 2006 when he was again removed from postal employment, this time as a direct consequence of his failure to report to work since his reinstatement in October 2005.

5.     Shortly after Mr. Broderick's second removal was effected on July 16, 2006, arbitrator Gudenberg issued a supplement to his September 12, 2005 award. This award, dated July 24, 2006, supplemented the initial award in that it directed that Mr. Broderick be returned to work as a distribution clerk at the Smithtown Post Office. (Ex. B at 1, 5-6) In contrast, the September 12, 2005 award merely directed that the parties "are to find a placement for [Mr. Broderick] as a distribution clerk or such other position that does not handle cash transactions as they may determine." (Ex. A at 13)    .

6.     Under the sequence of events outlined above, by the time the supplemental Gudenberg award was issued on July 24, 2006, Mr. Broderick had been removed a second time

2

for AWOL and for failure to follow management instructions. Because of that second removal, no further action was possible or appropriate to implement the Gudenberg awards.

7.    The APWU filed another grievance on Mr. Broderick's behalf, this time challenging his July 16, 2006 (second) removal. The parties were unable to resolve the matter through the grievance process and that grievance proceeded to a hearing on February 8 & 23, 2007 before Arbitrator Sarah C. Holden. This hearing and the subsequent award referenced below occurred *after* the present litigation was filed in the United States District Court for the District of Columbia on January 26, 2007.

8.    Arbitrator Holden issued her award on February 26, 2007, first determining that

> It is the act of not following management's instructions that is the subject of the instant grievance; the issue is not whether the instructions were in compliance with the Gudenberg award. The Service's *charges that the grievant was AWOL and that he failed to follow instructions were not at any time before Arbitrator Gudenberg* and were not therefore, resolved by his "Supplemental Award."

(Ex. C at 6) (emphasis added). Arbitrator Holden then went on to address the merits of the grievance and, upon consideration of the facts, sustained the grievance and directed that Mr. Broderick be reinstated at the Smithtown postal facility as a distribution clerk. (Ex. C at 7). Notably, however, Arbitrator Holden also directed that "[t]here shall be no award of back pay associated with the instant grievance". Id.

9.    The Postal Service promptly implemented the Holden award and Mr. Broderick was reinstated as a full time regular distribution clerk position at the Smithtown postal facility effective March 12, 2007.

10.    In September, 2006, Mr. Broderick finally provided the necessary information to

3

process his back pay award which was initially requested in February 2006. On November 3, 2006, Mr. Broderick was issued full payment for back pay for the period January 15, 2005 to October 20, 2005. (Ex. D, copy of back pay remittance)

11.    Mr. Broderick was not given back pay for the period from October 20, 2005 through March 12, 2007 because of Arbitrator Holden's findings (1) that the charges that he "was AWOL and that he failed to follow instructions were not at any time before Arbitrator Gudenberg," (Ex. C at 6), and (2) that "[t]here shall be no award of back pay associated with" the award reversing the second removal. (Id. at 7).

12.    In summary, Mr. Broderick has now (1) been reinstated to a position as a full time regular distribution clerk at the Smithtown postal facility (a position in which does not handle cash transactions), (2) been granted full restoration of his seniority rights, and (3) been paid for all back pay awarded to him.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


May 3, 2007                              _Andrew J. Moresco_
                                        Andrew J. Moresco


4

# EXHIBIT A

REGULAR ARBITRATION PANEL
```
--------------------------------)
                                )
In the matter of the Arbitration )   GRIEVANT: C. Broderick
                                )
        between                 )   POST OFFICE:Smithtown. NY
                                )
   UNITED STATES POSTAL SERVICE  )   USPS CASE #A00C-4A-D05055036
                                )   APWU CASE #78700404
        and                     )
                                )
   AMERICAN POSTAL WORKERS UNION, )
   AFL-CIO                       )
                                )
--------------------------------)
```

BEFORE:  HARRY R. GUDENBERG, ARBITRATOR

APPEARANCES:

     For the U.S. Postal Service: Sandra L. Peets
                                    Labor Relations Specialist

     For the A.P.W.U.:        Peter Coradi
                                    National Business Agent

Place of the Hearing: Hauppauge, New York

Dates of Hearings:  June 8 and August 26, 2005

Date of Award: September 12, 2005

Relevant Contract Provisions: Articles 16, 19

Contract Year: 2004

Type of Grievance: Disc.

AWARD: For the reasons detailed in the full decision, the grievant is to be reinstated with back pay, less any other compensation received, from January 15, through the implementation of this decision . However, he is not to be reinstated as a window clerk. The Service and the Union, together with the grievant, are to find placement for him as a distribution clerk or such other position that does not handle cash transactions as they may determine.

Jurisdiction will be retained in the event the parties request assistance in the implementation of this decision.

Arbitrator:

                                    Harry R. Gudenberg

The parties in accordance with the terms of the National Agreement appointed this Arbitrator to hear the dispute in this case and issue a decision and award.

At the hearing the parties were afforded full opportunity to present oral and written evidence, examine and cross examine the witnesses who testified under oath, engage in oral argument, and otherwise support their positions.

The testimony and evidence of the parties and their positions and arguments presented at the hearing and thereafter have been fully considered in the issuance of this opinion and award.

### STIPULATED ISSUE

Was the notice of removal dated December 8, 2004 effective as of January 15, 2005 issued to the grievant for just cause? If not, what shall be the remedy?

### SUMMARY OF THE CASE

The grievant was issued a notice of removal in December 2004 which said in pertinent part:

> "During April and July of 2004, Postal Inspectors posing as customers made four stamp purchases in varying amounts from you at the Smithtown NY Post Office. On two of these occasions you did not properly record the sale of the stamps into the retail terminal nor did you provide any form of customer receipt.
>
> Analyses of your daily transaction reports for the dates of the Inspection Service purchases disclosed that you only recorded a portion of the transactions. On April 24, 2004 an undercover Postal Inspector purchased one $37.00 roll of first class stamps and five $7.40 booklets of first class stamps for

-2-

a total transaction of $74.00 you only recorded the sale of the five booklets into the POS retail terminal and did not record the sale of the $37.00 roll of stamps.

On July 29, 2004 an undercover Postal Inspector purchased three sheets of one dollar stamps valued at $20.00 each for a total transaction of $60.00. You only recorded the sale of one of these sheets into the POS retail terminal and did not record the sale of the remaining $40.00 of stamps.

On November 1, 2004 Window Technician T-6 Grace Doria reported a discrepancy of $1,100.00 in the advance deposit for the day. It was determined that eleven $100.00 bills were missing from the deposit money. Supervisor of Customer Service Kirk Jablonsky accessed the duplicate keys and in the presence of Supervisor of Customer Service Keith Krongel, T-6 Doria and SSA Louis Delveccio opened your cash drawer. An audit of the cash drawer's contents was conducted by these same individuals. Eleven $100.00 bills were discovered in the far left bill section of the drawer. The drawer was returned to the safe compartment and the compartment was sealed.

On November 2, 2004 an audit of the cash drawer was conducted with you and Postal Inspectors in the presence of your APWU representative. The drawer contained $1,180.80 in cash of which $1,100.00 in the form of eleven $100.00 bills, was found in the far left compartment of the drawer. A review of your final transfer initiation report for November 1, 2004 shows that you had a total of eleven $100.00 bills in your deposit. When interviewed by Postal inspectors you stated that you did not know how the missing funds had gotten into your drawer and that you did not notice any extra funds in your drawer when you secured it in the safe."

The grievant was then placed on administrative leave with pay.

On December 6, 2004 a pre-disciplinary interview was held attended by the grievant, the shop steward and the supervisor.

The Service then issued the notice of removal and cited provisions of the Employee and Labor Relations Manual which the grievant violated, specifically Section 661.53 governing employee misconduct and Section 661.3 governing standards of conduct.

A grievance was timely filed. At step 2 the grievance said:

"At issue in the instant grievance is the removal of the grievant, the sole charge being misappropriation of funds.

-3-

Under the charge in the NOR ((Notice of Removal), the Service states that on two occasions, out of four, postal inspectors made stamp purchases and the grievant allegedly did not properly record the sale of stamps nor properly provide a receipt to the "customer".

The NOR further states that an alleged analysis of his daily transaction reports disclosed that he only recorded a portion of the transactions. It then goes on to detail the alleged improper transactions.

No where in the Notice of Removal does it state that the grievant misappropriated funds. It dos not state how, when or even how much. It does not support the charge.

Further, based upon the alleged findings of the inspection service in an Inspectors Memorandum, the Union requested information to rebut this charge. To date, there has not been any information provided. The Union asked for the printouts of the grievant's daily transactions reports; nothing was provided. The Union asked to interview the inspectors who allegedly made the cited transactions; this request was also ignored. In the initial interview with the inspectors, they stated to the grievant they have videotape; the Union asked for this and this request was also ignored.

The Service has fatally harmed the Union's investigation by denying this extremely pertinent and relevant information. The Service has also woefully failed to detail the actions that gave rise to this removal, in that there is no reference in the NOR that the grievant in fact took anything. What they have at least alleged in writing is that possibly the grievant failed to perform the transactions the way the Service asks, but that is hardly a transgression that warrants workplace capital punishment.

In that the Service has failed miserably in establishing even a remote bit of proof of misappropriation,...."

An investigative memorandum was issued by the Inspection Service dated November 30, 2004. This report included the following relevant paragraphs:

> 2.    Under SIA, the Sales and Services Associates (SSAs) at the Smithtown MPO obtain stamp stock for sale to the public from a location accessible to all window clerks know as the "retail floor stock". All stamp stock and merchandise items are assigned a barcode or identification number which should be scanned or manually entered into the Point-of-Service (POS) retail terminal

-4-

by the SSA as merchandise is sold. The proper recording of sales reduces the retail floor stock inventory by the transaction amounts. SSAs retain the cash derived from sales throughout the day. At the conclusion of each business day, SSAs are required to complete a PS Form 1412, Clerk Financial Report, in which the day's receipts and disbursements are tallied to create a balanced report. The SSAs are required to turn in all cash in excess of a change fund of approximately $100.00 for which they are responsible. Each SSA maintains this change fund in a safe compartment which is solely under their control. A designated official periodically audits the floor stock as well as each SSA's cash accountability.

4.    During April and July of 2004, Postal Inspectors posing as customers made four stamp purchases in varying amounts from Chris Broderick at the Smithtown MPO. On two of these occasions SSA Broderick did not properly record the sale of the stamps into the retail terminal nor did he provide any form of customer receipt. A stamp sale correctly processed through the retail terminal generates a computerized receipt which the employee is required to provide to the customer.

5.    Analyses of SSA Broderick's daily transaction reports for the dates of these Inspection Service purchases disclosed that in both instances he recorded only a portion of the transactions. On April 22, 2004, an undercover Postal Inspector purchased one $37.00 roll of first class stamps and five $7.40 booklets of first class stamps for a total transaction of $74.00. Mr. Broderick only recorded the sale of the five stamp booklets into the POS retail terminal. He failed to record the sale of the $37.00 stamp roll.

6.    On July 29, 2004, an undercover Postal Inspector purchased three sheets of one dollar stamps valued at $20.00 each, for a total transaction of $60.00. Mr. Broderick only recorded the sale of one of these sheets, failing to enter the sale of the remaining $40.00 of these stamps into the POS retail terminal.

8.    On the morning of November 2, 2004, information was received from Smithtown Postmaster Frank Capozzoli regarding missing postal funds. He related that on the prior evening $1,100.00 was missing from the deposit at the close of business. Searching for the money and recounting the available funds had yielded negative results. The supervisor subsequently decided to examine the cash drawers of the SSAs who had worked that day. Upon opening SSA Chris Broderick's drawer, eleven $100.00

bills, totaling $1,100.00 were found. Postal Inspectors responded to the Smithtown Post Office.

9.    Inspectors proceeded to conduct interviews of the individuals involved in the events of the previous evening: Supervisor Kirk Jablonsky, Supervisor Keith Krongel, Window Technician (T-6) Grace D'Oria, and SSA Louis Delvecchio. Broderick, and a trainee all made their final deposits at approximately 14:45. Everyone's money had been counted by Ms. D'Oria and the funds were secured in the safe. Ms. D'Oria was preparing the advance deposits shortly after 17:00 when she realized $1,100.00 were missing. She recounted the available funds and reviewed submitted paperwork but was unable to account for the missing money.

10.   Supervisors Krongel and Jablonsky, who had both left the office for the night, were notified and returned to assist. Ms. D'Oria's review of the daily paperwork revealed that SSA Chris Broderick had submitted eleven $100.00 bills as part of his final deposit. A decision was made to inspect the cash drawers of the SSAs who had worked earlier that day, beginning with Mr. Broderick's. Supv. Jablonsky accessed the duplicate keys and in the presence of Supv. Krongel, T-6 D'Oria and SSA Delvecchio opened Mr. Broderick's cash drawer safe compartment. An audit of the cash drawer's contents was conducted by these same individuals.    Eleven $100.00 bills were discovered in the far left bill section of the drawer. Upon completion of the audit, the drawer and all of its contents were returned to the safe. A copy of PS Form 3294-C, dated 11/01/04, is attached as Exhibit 5. Copies of the written sworn statements provided by Mr. Jablonsky, Mr. Krongel, Ms. D'Oria, and Mr. Delvecchio are attached as Exhibits 6 thru 9.

11.   Postal Inspectors and SSA Broderick conducted an audit of his cash drawer on November 2, 2004 in the presence of his APWU representative. The drawer contained $1,180.80 in cash of which $1,100.00, in the form of eleven $100.00 bills, was found in the far left bill compartment of the drawer.    Review of Mr. Broderick's final Transfer Initiation report for November 1, 2004 shows he had a total of eleven $100.00 bills in his deposit. Factoring out this $1,100.00 from the audit total of $1,180.80 leaves a cash on-hand figure of $80.80, $19.88 short of the cash retained amount of $100.68 reported on his previous PS Form 1412. A copy of PS Form 3294-C, dated 11/02/04, is attached as Exhibit 10.    A copy of the Transfer Initiation report, dated 11/01/04, is attached as Exhibit 11.    A copy of PS Form 1412, dated 11/01/04, is attached as Exhibit 12.

-6-

12. Postal Inspectors interviewed SSA Broderick following the audit. He stated he did not know how the missing $1,100.00 had gotten into his drawer. He said he provided all the cash required to T-6 Grace D'Oria the previous day and did not notice any extra funds in his drawer when he secured it in the safe. He stated he enters all transactions in the POS retail terminal and always provides customers with a receipt. He could not explain his failure to properly record the sale of stamps and provide receipts for the purchases made by undercover Postal Inspectors. the interview was terminated at Mr. Broderick's request. He declined to provide a written statement. A Memorandum of Interview is attached as Exhibit 13.

## ANALYSIS AND FINDINGS

According to the record the Smithtown New York Post Office had experienced a shortage of more than $65000 in fiscal year 2002. This shortage resulted in an investigation of this station by the Postal Inspection Service.

The events involving the grievant, as recorded by the inspectors, have been previously quoted.

The Union, at the arbitration hearing and in their closing statement, thereafter, contended that the Service had not proven the grievant had misappropriated postal funds.

The Union asserted the Service had also failed to provide the grievant with rights granted under the terms of the National Agreement since there were numerous procedural contractual violations made by the Service.

These violations included the following violations:

The Service's failure to provide a detailed answer at step 2 of the grievance procedure and only completing PS Form 2609 by stating "Removal is for just cause", without answering any of the

-7-

Union's allegations.

In support of this position, the Union relied on the Joint
Contract Interpretation Manual (JCIM) which states at Page 104 Step
2 Decision:

> "Management must provide the union representative a written
> decision within ten days of the step 2 meeting... The
> decision shall include (1) all relevant facts; (2) contract
> provisions involved,; and (3) detailed reasons for denial."

The Service's failure to do an independent review of the facts
prior to issuing discipline but relying solely on the inspectors
investigation and report.

The failure of the Service to provide the Union with certain
requested information discussed in its step 2 appeal, including
printouts of the grievant's daily transactions and copies of the
videotape.

The failure of the Service to prove beyond a reasonable doubt
that the grievant had misappropriated funds. The Union claimed
this was mere conjecture without proof.

The Service did not agree. They said the Union was fully
aware of the involvement of the inspectors, was present when the
inspectors interviewed the grievant; had a copy of the inspection
report; were told that the Service's action was not based on the
videotapes, so they did not need to be turned over to them.

The Service explained there was a step 2 grievance meeting and
the Union filed no objections, additions or corrections following
this meeting.

The Service, through the testimony of the Smithtown
Postmaster, explained that the daily transaction reports were not

-8-

available to be given to the Union since they were missing as a result of the failure of an employee to safeguard these reports.

The Service said management did not err by their reliance on the inspectors' investigative memorandum. To support this contention the Union introduced a prior arbitration decision from Arbitrator Zumas, Case #N7M-1E-D38425/40300 (1992) who held:

> "The Union's contention that the supervisor issuing the adverse actions did not make an independent investigation is without merit. A supervisor clearly has a right to rely on the investigation of the Postal Inspection Service, the investigating arm of the Postal Service."

Other arbitrators, including this arbitrator, have issued similar rulings, especially where another investigation would bear no different fruit since no different evidence could be independently obtained. See also Case #A98C-4A-D001118449 (2001) which held that a review of an investigative memorandum by the Service can be used to support an independent decision to issue discipline.

While each party had logical reasons for their actions and positions, this case presents a most troubling picture.

Initially one must be concerned why, if the grievant was under suspicion for possible misappropriation in April and July 2004, he was allowed to remain on the window until November.

The Service said their investigation was, during that time, continuing. How long does one allow an investigation involving extensive financial losses, as at Smithtown, to continue without some action or a more detailed explanation of the reasons for the delay.

-9-

The purchases and sales made by the inspectors in April and July 2004 should have, admittedly, resulted in an overage in the grievant's close out balance. They did not. Receipts were not given to the inspector/customers, as required.

The grievant, during his interview with the inspector in November could not explain the events in April and July 2004. With the passage of time and the normal volume of transactions handled by window clerks such response cannot be determined to be an illogical response. One can only wonder as to what events actually happened on those days.

On November 1st when the grievant's drawer was taken from the safe and counted, one employee said he witnessed and helped count the funds which totaled $1180.75.

When the drawer was counted the following day by the grievant in the presence of the inspectors the cash was counted and totaled $1180.80.

While not a substantial difference, a difference none the less, which was not explained. Window clerks are required to account for every penny, no different from a bank teller. Any difference raises questions and puts an account out of balance.

One must also be troubled by the fact that $1100.00 in $100.00 bills was missing after having been turned in by the grievant to the closeout person. More troubling is that this exact amount and bills were found in the grievant's cash drawer.

The closeout employee testified that there was a great deal of confusion during the closeout period on November 1st. However, it

-10-

is accepted practice that no one is to have access to anyone else's cash drawer and no claim that anyone other than the grievant had access was made.

How did these bills get into his cash drawer?  Another question that one can only wonder about.

Also confusing is the fact that the grievant's close out record on November 1 reflected he had retained cash of $100.68 (Joint Exhibit #3, Exhibit 10).  The count of November 2, showed retained cash of $80.80.  No explanation of the difference of $19.88 was offered, or from the record, investigated.

Joint Exhibit #3 Exhibit 3 also reflected financial calculations that make no sense.  This document was the grievant's cash credit on April 30, 2005.  It reflects a cash total of $104.95.

The Union questioned the entry on this form under pennies which was recorded as 59 equaling 5.90.  In reviewing this document the only conclusion to be reached is that the totals do not and did not balance.

This form listed the following cash items:

2 $20.00 bills = $40.00

1 $ 5,00 bill  =   5.00

43 $1.00 bills =  43.00

21 quarters    = 5.25

49 dimes       = 4.90

19 nickels     =  .95

59 pennies     = 5.90

-11-

Total          = $104.95

Adding these figures results in a total of $105.00 or a five cent difference. If the 59 pennies are counted as 59 cents the total is $99.69 or a difference of $5.26.

The only determination that can be made from these additions is that reliance on any of these numbers is suspect, at best.

Does the evidence support the removal action? It is at best circumstantial. While the transactions were certainly questionable and troubling, there was no proof that the grievant had taken or misappropriated the funds.

Beyond all of the financial discrepancies, the failure of the Service to be able to provide the Union with the records of the April and July transactions must be construed as harmful to a full and fair investigation.

It is beyond question that the grievant did not follow proper postal procedures. He is responsible and accountable for the handling of his cash and drawer. His record keeping and financial controls were lacking and he too must bear responsibility for all the inaccurate cash reports.

The totality of his acts, or failure to act, results in a determination that he cannot return to a window or cash handling position.

Since the evidence, even by a preponderance, did not uphold his removal, he is to be reinstated. He is to receive back pay, less any other compensation received from January 15, 2005 through the implementation of this decision. However, he is not to be

-12-

reinstated as a window clerk.  The Service and the Union, together with the grievant, are to find placement for him as a distribution clerk or such other position that does not handle cash transactions as they may determine.


September 2005                    Harry R. Gudenberg
                                       Arbitrator

# EXHIBIT B

RECEIVED

AUG - 7 2006

COLLECTIVE BARGAINING AND ARBITRATION
LABOR RELATIONS

REGULAR ARBITRATION PANEL

-------------------------------)
                               )
In the matter of the Arbitration )          GRIEVANT: C. Broderick
                               )
      between                  )          POST OFFICE: Smithtown. NY
                               )
  UNITED STATES POSTAL SERVICE )          USPS CASE #A00C-4A-D05055036
                               )          APWU CASE #78700404
      and                      )
                               )
  AMERICAN POSTAL WORKERS UNION, )
  AFL-CIO                       )
                               )
-------------------------------)

BEFORE:  HARRY R. GUDENBERG, ARBITRATOR

APPEARANCES:

        For the U.S. Postal Service: Sandra L. Peets
                                     Labor Relations Specialist

                                     Carmine Palladino
                                     Mgr. Labor Relations

        For the A.P.W.U.:            Peter Coradi
                                     National Business Agent


Place of the Hearing: Hauppauge, New York

Dates of Hearing: July 17, 2006

Date of Award: July 24, 2006

Relevant Contract Provisions: Articles 16, 19

Contract Year: 2004

Type of Grievance: Disc.

AWARD: The grievant is to be returned to work at the Smithtown
       postal facility as a distribution clerk and is entitled to
       back pay and seniority credit for the reasons more fully
       discussed in the complete decision.

Arbitrator:

                                     Harry R. Gudenberg

On September 12, 2005 the following decision was issued after
two days of hearings which involved this dispute:

"For the reasons detailed in the full decision, the grievant
is to be reinstated with back pay, less any other compensation
received, from January 15, through the implementation of this
decision . However, he is not to be reinstated as a window
clerk.  The Service and the Union, together with the grievant,
are to find placement for him as a distribution clerk or such
other position that does not handle cash transactions as they
may determine.

Jurisdiction will be retained in the event the parties request
assistance in the implementation of this decision."

On October 25, 2005 the Union advocate, by letter, with a copy
to the Service, advised this Arbitrator of the following:

"On October 18, 2005 I was made aware that the Postal Service
instructed the Grievant Christopher Broderick that he must
report to the Bethpage, NY postal facility as a part-time
flexible employee with a reporting time of 7 PM.

The Grievant is a full time regular clerk, employed at the
Smithtown, NY postal facility, with a reporting time of 6:45
AM.

On the above date, I spoke to Mr. Carmine Palladino, Manager,
Labor Relations, Long Island District regarding this matter.
I made the union's position clear that Mr. Broderick should

-2-

return to Smithtown, with the same status and same work hours."

Thereafter, several attempts were made to arrange a conference call between the advocates, Mr. Palladino, and the Arbitrator.

On November 10, 2005 a conference call was held. The parties were reminded that, in accordance with the September 12, 2005 decision they were, jointly, to attempt to locate a position suitable to the grievant, recognizing that it would take special efforts by all parties to accomplish such effort.

During this call it was suggested that the parties could attempt to find another location for the grievant to return to work but that it was not to be as a part-time flexible employee, since such a position and assignment would not provide the grievant with a daily or weekly work schedule but might subject him to less hours per day or week under the terms of the Agreement.

The parties were reminded that the facts in the initial case did not support the grievant's removal and his reinstatement was ordered since the actions the Service took were not completely supported, for the reasons discussed in the initial decision.

On January 12, 2006 the Union, by letter, with a copy to the Service, advised the Arbitrator as follows:

"On January 5, 2006 I was provided, verbally, on behalf of the Grievant, with 2 "offers". The offers are for the Grievant to be employed as a Part-Time Flexible Clerk at either the Mid-Island P&DC or Western Nassau P&DC. In either situation the Grievant would be on the night tour with only a four (4) hour

-3-

guarantee when scheduled to work.

Clearly this offer, which took two (2) months to be made is unacceptable and in conflict with your September 12, 2005 award, as well as your clarification which was articulated during the November 10, 2005 conference call.

As another point of information, despite your award which reflects the Grievant is to receive Back Pay from January 15, 2005 through the implementation of your decision no effort has been made to process the aforementioned pay."

Sometime thereafter, the Arbitration Scheduling Coordinator contacted the Arbitrator and indicated the parties had not been able to resolve their disagreements or find a suitable position for the Grievant and requested the scheduling of another hearing.

On July 17, 2006 another hearing involving the representatives from the Postal Service, the Union, and the Grievant took place before the Arbitrator.

At that time the Service advised that they had been unable to find any position for the grievant, other than a part-time flexible employee. The Service explained they had determined they had no other option in order to protect the seniority rights of other employees as provided for in Article 37 of the Agreement.

The Union took the position that the Service could have returned the Grievant to the Smithtown postal facility, as a distribution clerk, without window responsibilities. The Union said they had consistently made this recommendation to the Service but to no avail.

-4-

Extensive discussions of other options/possibilities took place but neither party was willing to consider other alternatives.

The Union cited several Postal documents as well as the Joint Contract Interpretation Manual (JCIM) and asserted the Service was purposefully avoiding the implementation of the prior award.

In my prior decision, in part, (the entire decision is in the hands of the parties) the following statements were made:

"It is beyond question that the grievant did not follow proper postal procedures. He is responsible and accountable for the handling of his cash and drawer. His record keeping and financial controls were lacking and he too must bear responsibility for all the inaccurate cash reports.

The totality of his acts, or failure to act, results in a determination that he cannot return to a window or cash handling position.

Since the evidence, even by a preponderance, did not uphold his removal, he is to be reinstated. He is to receive back pay, less any other compensation received from January 15, 2005 through the implementation of this decision. However, he is not to be reinstated as a window clerk. The Service and the Union, together with the grievant, are to find placement for him as a distribution clerk or such other position that does not handle cash transactions as they may determine."

Since the parties have been unable to find a position for the grievant that they believe would have been suitable or workable, it is directed that the grievant be returned to the Smithtown postal

facility, as a distribution clerk.

According to the parties the Smithtown facility is operational during the hours of 5 AM to 7 PM. The grievant must be returned to work and assigned as a regular employee with a work schedule within the Smithtown facility hours of operation. He, in accordance with my original decision is to be credited with seniority for the period of time of the removal action.

While it is recognized that the Agreement allows for bids to window positions, the Grievant would be well advised to refrain from any such bids since his inability to handle cash transactions, in accordance with postal procedures, is what resulted in his being involved in this disciplinary action.

Discussion with the aforementioned parties also took place concerning the back pay issue.

The Grievant admitted he had received paper work from the Service requesting certain information. He explained he had not provided the data or submitted it since there was a great deal of confusion over his reinstatement and job offers and advice he had been given.

The parties were advised that the grievant should quickly provide the Service with the paperwork and data they were seeking and that the Service should, upon receipt, rapidly process their back pay obligation.

No other issues were presented for consideration of the original decision. The hearing was then concluded. This supplementary decision is being issued on this 24th day of

-6-

July 2006.

Harry R. Gudenberg
Arbitrator

# EXHIBIT C

**REGULAR ARBITRATION PANEL**

In the Matter of the Arbitration between

UNITED STATES POSTAL SERVICE

and

AMERICAN POSTAL WORKERS UNION,

AFL-CIO

Grievant:  **Christopher Broderick**

Post Office:  **Bethpage, NY**

Case No:

**USPS #A00C1AD06253650**
**Union # B0317706C**

---

BEFORE:  Sarah Cannon Holden, Arbitrator
APPEARANCES:

> For the U. S. Postal Service:  **Jim Scanna**
> For the Union:  **Peter Coradi**

| | |
|---|---|
| **PLACE OF HEARING:** | Garden City, New York |
| **Date of Hearing:** | February 8 & 23, 2007 |
| **Date of Award:** | February 26, 2007 |
| **Type of Grievance:** | Removal |

    The parties agreed to bifurcate the hearing.  The procedural issue was heard on February 8, 2007.  A hearing on the merits was held on February 23, 2007.  At the request of the parties, I issued a bench decision at the conclusion of the first day of hearing and the second hearing date was set.

**ISSUE.**

    The Union submitted the following issue for decision on the first day of hearing:

> **Is the Postal Service barred by the principles of res judicata and collateral estoppel from issuing the Notice of Removal, dated June 14, 2006 to the grievant, Christopher Broderick?  If so, what is the appropriate remedy?**

The parties agreed to the following issue heard on the second day of hearing:

> **Did the Postal Service have just cause to issue the grievant a Notice of Removal on June 14, 2006?  If not, what shall be the remedy?**

**BACKGROUND.**

The origins of the instant grievance have their roots in a prior removal issued to the grievant by the Postal Service and the arbitration decision sustaining the grievance. The grievant was a full-time regular clerk on Tour 2 at the Smithtown Post Office when he was removed from the Service on December 8, 2004. He grieved his removal. A hearing was held before Arbitrator Harry R. Gudenberg in June and August 2005. He issued his award on September 12, 2005. He found that "the grievant is to be reinstated with back pay.... However, he is not be reinstated as a window clerk. The Service and the Union, together with the grievant, are to find placement for him as a distribution clerk or other such position that does not handle cash transactions as they may determine." Arbitrator Gudenberg retained jurisdiction "in the event the parties request assistance in the implementation of this decision."

On October 18, 2005 a meeting of the various parties was held to discuss implementation of the Gudenberg award. The grievant testified that the Postal Service simply told him where to report and that there was no real discussion. The record shows that Carmine Palladino, Manager of Labor Relations, instructed the grievant to report to NY L&D Center in Bethpage, New York on October 20, 2005 where he was reinstated as a part-time flexible clerk on Tour 3. At the time the grievant was working another job and asked for a 6 week delay in reporting to work. The Postal Service denied the request. The grievant asked for a 2 week delay. The request was again denied. At the request of Plant Manger Daniel Healy, the grievant did submit several PS Form 3971s requesting leave.

On November 4, 2005 the Postal Service sent the grievant a "3-Day Letter" in which the grievant was instructed to report to work immediately or show cause for his absence. He did not respond. On November 15, 2005 the Postal Service sent the grievant a "10-Day Letter" with similar instructions. The grievant was further informed that failure to respond to the letters will result in the grievant being charged with AWOL. It is this refusal that is the basis for the disciplinary action before me.

The grievant testified that he believed that in accordance with the Gudenberg Award he should have been returned to Smithtown as a full-time clerk on Tour 2. The Union stated that it tried to work out its differences with the Postal Service. The parties,

2

however, were unable to agree and scheduled another hearing for July 17, 2006 before Arbitrator Gudenberg at which he was asked to clarify his award.

On June 14, 2006 the grievant, Christopher Broderick, was issued the Notice of Removal that is the subject of the current grievance. The charges are: <u>Continuous Absence Without Leave and Failure to Follow Instructions</u>. The effective date of the removal was Sunday, July 16, 2006, one day prior to the second hearing before Arbitrator Gudenberg.

On July 24, 2006 Arbitrator Gudenberg issued a "Supplemental Decision." He clarified his previous award stating that "(t)he grievant is to be returned to work at the Smithtown postal facility as a distribution clerk and is entitled to back pay and seniority credit for the reasons more fully discussed in the complete decision."

The Union believes that the "Supplemental Decision" should have resolved the second Notice of Removal that is the subject of the instant grievance before me.

However, the Postal Service refused to rescind the second Notice of Removal arguing that it had just cause inasmuch as the grievant refused to report to duty as directed.

The Union filed a grievance on behalf of Christopher C. Broderick challenging the Notice of Removal on both procedural and substantive grounds. The grievant testified that at Step 1 Supervisor Linda M. Moran (Bethpage) acknowledged that she was not familiar with the grievance, did not know the grievant, that the grievant did not work for her and that the two never met. The parties were unable to settle the grievance.

The grievance was presented to me for decision.

## ARGUMENTS OF THE PARTIES.

I.       Procedure

   <u>The Union.</u>

The Union argued that the Gudenberg decisions are dispositive of the issue presented by the instant grievance and that the grievant should be reinstated forthwith.

The Union argued that the first Gudenberg Award is unambiguous and that the Postal Service should have put the grievant back to work in Smithtown in the first place. It argued that the matter before me, the June 14, 2006 removal, would never have become an issue had the Postal Service complied with the Gudenberg Award.

3

In sum, it argued that the grievant's right to reinstatement has already been resolved; that the instant grievance is moot; and, that the grievant should be restored to a full-time position at Smithtown.

### The Postal Service.

The Postal Service argued that the instant Notice of Removal is an action taken subsequent to the Gudenberg Award and is not, therefore, resolved by it. It argued that it is not up to the grievant or the Union to decide on the interpretation of an arbitration award. In addition, it argued that if the grievant disagreed with the Postal Service's action, he should have reported as directed and grieved the action. Surely, the Postal Service argued, it could not be denied the right to discipline an employee just because the parties disagreed about the interpretation of an arbitration award.

It argued that the grievant cannot be allowed to ignore oral directives or letters of inquiry just because he disagrees with management. The Postal Service asks that the grievance be heard on the merits.

II.    Merits

### The Postal Service.

On the merits the Postal Service argued that the Gudenberg Award does not say that the grievant must be reinstated as a full-time employee at the Smithtown facility. It argued that a meeting was held following the issuance of the award and that while the parties could not agree on the assignment the Service did direct the grievant to report to work on October 20, 2005. Not only did he refuse to report to work, he failed to provide the Service with notice of any mitigating circumstances for his absence as requested in two letters in November 2005.

In addition the Postal Service argued that inasmuch as the Union's procedural arguments are without merit and the Service acted in accordance with its understanding of the Gudenberg Award, the grievant violated his contractual obligation to return to his assigned position. It argued further that had the grievant reported to work as instructed and then grieved this matter would have been resolved one way or another by now. Instead, he is responsible for its being dragged out.

In sum, the Postal Service argued that it had just cause to issue the grievant the

4

Notice of Removal on July 14, 2005.

### The Union.

On the merits the Union argued that the Gudenberg award is unambiguous and that the Service is entirely responsible for the situation that developed with the grievant. It argued that there is nothing in that award to suggest that the grievant should be returned as a part-time flexible instead of the full time clerk that he had been. Furthermore, it argued that there was no question that the grievant was supposed to be returned to Smithtown and not Bethpage.

In addition it argued that the testimony provided by the grievant must be taken as the truth inasmuch as the Service presented no witnesses at the hearing. The grievant testified that he never received any papers telling him what his assignment was or where it was. The Union argued that management at Bethpage was not aware that the grievant was supposed to report to that facility. It contended that the grievant submitted the Forms 3971s to Plant Manager Daniel Healy at his request and with the understanding that the signed forms would be returned to him (the grievant). None was ever signed by management or returned to the grievant.

Furthermore the Union argued that it is clear that the Service was not treating the grievant fairly inasmuch as it established Sunday as the effective date of the instant dismissal. Not only is Sunday never used as an effective date of dismissal, it was also the day before the scheduled date of the second hearing with Arbitrator Gudenberg. The Union argued that these dates were not coincidental.

Finally, the Union argued that the second Gudenberg award confirmed that it and the grievant had been correct in their interpretation. Thus, it argued, the Service did not have just cause to issue the grievant the Notice of Removal.


## DISCUSSION and AWARD.


### Procedural Issue

I find that the Union's argument that Arbitrator Gudenberg's July 24, 2006 "Supplemental Award" is dispositive of the instant grievance is without merit. I find that it is not up to the grievant and/or the Union to act unilaterally upon its determination that

the Service's interpretation was incorrect. Arbitrator Gudenberg made it clear that the parties were to work out the grievant's new assignment. When they could not agree they should have returned to the arbitrator. They did not. And the grievant did not report to work as instructed. It is the act of not following management's instructions that is the subject of the instant grievance; the issue is not whether the instructions were in compliance with the Gudenberg award. The Service's charges that the grievant was AWOL and that he failed to follow instructions were not at any time a matter before Arbitrator Gudenberg and were not, therefore, resolved by his "Supplemental Award". They are the charges before me and I find that they are issues subsequent to and, therefore, separate from the issue raised in the grievance before Arbitrator Gudenberg. Thus, the principles of res judicata and collateral estoppel do not apply.

Therefore, I find that the Union's procedural argument is without merit. I shall turn now to the merits of the grievance before me.

Merits

The parties agree on the basic facts of this grievance. I find that the facts suggest a series of mistakes were made which led finally to the discipline issued to the grievant. The parties did not engage in an effective or cooperative effort to implement Arbitrator Gudenberg's award. Rather than request an immediate clarification of the award, the Service instructed the grievant to report to a part-time flexible position in Bethpage. The communications between Bethpage management and the grievant suggest that the Service did not formally notify management at Bethpage of the grievant's new assignment.

The grievant claimed that he did not report to Bethpage because the assignment ignored Arbitrator Gudenberg's award. On the other hand the evidence and testimony were that the grievant twice requested, from Bethpage management, a delay in reporting to his new assignment. He did not grieve the assignment; he merely did not show up to work when management refused to comply with his requests. Arbitrator Gudenberg retained jurisdiction in the case that the parties had difficulty implementing his award. Neither party made such a request until months after the grievant was directed to report to Bethpage. By that time the grievant had been issued the instant Notice of Removal for being AWOL and for not following instructions.

Arbitrator Gudenberg's "Supplemental Award" clarifies his original award. He

6

directs that "(t)he grievant is to be returned to work at the Smithtown postal facility as a distribution clerk and is entitled to back pay and seniority credit for the reasons more fully discussed in the complete decision."

Thus, it turns out that the grievant should not have been assigned to a part-time flexible position at Bethpage. That was the Service's error. It is also true, however, that the grievant made an error. Had the grievant reported as instructed and filed a grievance in a timely fashion this matter could have been resolved months ago. The accepted practice is to obey an order in the moment and then grieve it. Obey now, grieve later. The grievant failed to follow the accepted practice and he failed to report for his assigned tour.

The question then becomes whether the Postal Service had just cause to remove the grievant as a result of the above-outlined circumstances. I find that when all the facts are weighed the removal of the grievant is not justified.

**THEREFORE, I award as follows:**

**PROCEDURE: I find that the Postal Service is not barred by the principles of res judicata and collateral estoppel from issuing the June 13, 2006 Notice of Removal to Christopher Broderick.**

**MERITS: I find that the Postal Service did not have just cause to issue the June 13, 2006 Notice of Removal to Christopher Broderick. The grievant shall be reinstated in accordance with the findings of the July 24, 2006 Gudenberg Supplementary Award. There shall be no award of back pay associated with the instant grievance.**

Sarah Cannon Holden

7

REGULAR ARBITRATION PANEL

In the Matter of the Arbitration between

UNITED STATES POSTAL SERVICE

and

AMERICAN POSTAL WORKERS UNION,

AFL-CIO

Grievant:  **Christopher Broderick**

Post Office: **Bethpage, NY**

Case No:

**USPS #A00C1AD06253650**
**Union # B0317706C**

**BEFORE:** Sarah Cannon Holden, Arbitrator
**APPEARANCES:**

     For the U. S. Postal Service:  **Jim Scanna**
     For the Union:  **Peter Coradi**

| | |
|---|---|
| **PLACE OF HEARING:** | Garden City, New York |
| **Date of Hearing:** | February 8 & 23, 2007 |
| **Date of Award:** | February 26, 2007 |
| **Type of Grievance:** | Removal |

## A W A R D

**PROCEDURE:** I find that the Postal Service is not barred by the principles of res judicata and collateral estoppel from issuing the June 13, 2006 Notice of Removal to Christopher Broderick.

**MERITS:** I find that the Postal Service did not have just cause to issue the June 13, 2006 Notice of Removal to Christopher Broderick. The grievant shall be reinstated in accordance with the findings of the July 24, 2006 Gudenberg Supplementary Award. There shall be no award of back pay associated with the instant grievance.

*Sarah Cannon Holden*

Sarah Cannon Holden

# EXHIBIT D

**UNITED STATES POSTAL SERVICE**

IS/ACCOUNTING SERVICE CENTER, 2825 LONE OAK PARKWAY, EAGAN MN 55121-9640

11/03/2006

CHRIS R BRODERICK
POSTAL OFFICIAL IN CHARGE
POSTMASTER/MANAGER
PO BOX 9998
SMITHTOWN NY 11787-9998

## TYPEWRITER CHECK PAYMENT

**PAYEE NAME:** CHRIS R BRODERICK                   **DATE:** 11/03/2006
**SSN:**                                             **FINANCE NUMBER:** 357840
                                                     **SCHEDULE NUMBER:** 92165

**PAY CALCULATIONS**

| | | | |
|---|---|---|---|
| GROSS | 17,972.33 | SOCIAL SECURITY | 1,064.62 |
| ATIP | .00 | RETIRE | 268.48 |
| ALLOWANCE EIC | .00 | MEDICARE | 248.98 |
| LEP | .00 | FEDERAL TAX | 4,188.55 |
| ALLOWANCE RENT | .00 | HEALTH BENEFITS 112 | 801.00 |
| SPA | .00 | STATE TAX NY | 502.63 |
| ALLOWANCE TCOLA | .00 | CITY TAX | .00 |
| EBE    CDOA | .00 | UNION DUES W | 409.60 |
| ALLOWANCE EQUIP-MAINT | .00 | UNION DUES | .00 |
| EBE    VEHICLE HIRE | .00 | UNION DUES | .00 |
| EBE    SPEC DELIV FEE | .00 | INVOLUNTARY DEDS | .00 |
| EBE    SRVU | .00 | LIFE INS | .00 |
| TOTAL | 17,972.33 | BOND | .00 |
| | | CHARITY | .00 |
| | | INSURANCE | .00 |
| **REASON FOR CHECK:** U25030 | | FSA HEALTH CARE | .00 |
| ARBITRATION | | FSA DEPENDENT CARE | .00 |
| CASE #: A00C-4A-D 05055036 | | TSP LOAN | .00 |
| BACKPAY AWARD FOR 01/15/2005 TO 10/20/2005 | | TSP | 417.13 |
| SALARY RANGE FROM: $43,381.00 TO $45,157.00 | | TSP 50 | 0.00 |
| LEAVE ACCOUNT CORRECTED IN 23/2006 | | ALLOTMENT | .00 |
| TOTAL HOURS DUE: 1,592 BASE, AWARD DATE: | | MIL BUY BACK | .00 |
| 07/24/2006. MAIL TO: CARMINE V. PALLADINO, | | IBOND AMT | .00 |
| MANAGER LABOR RELATIONS, PO BOX 7401, | | OTHER INS AMT | .00 |
| ISLANDIA NY 11760-9401 KLO 23/06 9631 | | COMMUTER | .00 |
| | | TOTAL | 7,900.99 |

SUPERVISOR/DESIGNEE: *Bob Kodelka*

**PREPARED BY** PMPR09
**PROCESSED PAY PERIOD** 23
**YEAR** 2006

| PAYMENT DATE | PAYMENT AMOUNT | CHECK NUMBER |
|---|---|---|
| 11/03/2006 | $****10071.34 | 0102401780 |

Refer inquiries concerning this payment to the Minneapolis Accounting Service Center at the above address, or call (651) 406-1468.

## - OFFICE FILE COPY OF TCP REMITTANCE -

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **AMERICAN POSTAL WORKERS UNION, AFL-CIO**, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| **UNITED STATES POSTAL SERVICE**, | ) ) |
| Defendant. | ) ) ) |

**Civil Action No.: 07-0178 (RMC)**

### [PROPOSED] ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This matter having come before this Court on Defendant's Motion to Dismiss the Complaint, it is hereby

**ORDERED** that Defendant's motion is **GRANTED**.  It is further

**ORDERED** that the Complaint is dismissed in its entirety with prejudice.

**SO ORDERED** this _____ day of _____, 200__.

_____
United States District Court Judge